State ex rel. Duffel vs. Marks.

No. 6682.

STATE EX REL. FRED. DUFFEL, DISTRICT ATTORNEY PRO TEM., ET AL. VS.
MORRIS MARKS.

A party is not eligible as District Judge who has not practiced law in this State for
two years, next preceding his election.

In legal contemplation, a party can not be said to have practiced law, even though,
as a matter of fact, he may have done so, if he has not previously qualified to
practice, by complying with the requirements prescribed by the constitution.

Because one has acted as District Attorney, he can not be said, in a constitutional
sense, to have " practiced law."

A mere resolution, passed by the Board of Administrators of the University of
Louisiana, that the degree of bachelor of law shall be granted to a certain per-
son, and directing the President of the University to confer said degree, and the
usual diploma, followed by a refusal of the President to obey the direction, has
not the character and authority of a diploma.

The degree of bachelor of law, conferred on a party by the Board of Administrators
of the University of Louisiana, will not authorize him to demand of this court
a license to practice law in this State, unless the diploma is signed by the Presi-
dent of the University, and the Professors of the Department in which the stu-
dent has graduated.

APPEAL from the Fourth Judicial District Court, parish of Ascension.
Maher, J., acting for Flagg, J.

J. C. Egan, Assistant Attorney General. Frederick Duffel, District
Attorney pro tem., E. N. Pugh, E. P. Poché, H. F. Duffel, R. N. Sims, R. P.
Landry, and T. R. Winchester, for plaintiff and appellant.

J. D. Augustin, Gus. A. Breaux, St. M. Berault, Emile Legendre, Jno.
H. Ilsley & Son, William R. Mills, J. L. Gaudet, John Cheevers, L. De
Porter, Gervais Leche, for defendant.

ON MOTION TO DISMISS.

The opinion of the court was delivered by

DEBLANC, J. The transcript, in this case, is a duplicate of the trans-
cript in case No. 6681, and the motion to dismiss the appeal, filed in this
duplicate, is—with but a slight difference—the identical motion already
passed upon by this court. That difference is simply this : the last day
of the delay fixed by law for the return of such appeals, occurring on a
Sunday, the district attorney pro tempore, apprehending the very objec-
tion raised by defendant, caused to be filed in this court, on the ninth day
after the judgment was signed, one of the transcripts herein mentioned;
the other transcript was filed on the eleventh, and could not have been
filed on the tenth day, which, as admitted, was a Sunday. That both
were filed in time is no longer an open question.

C. P. 318, 575.   8 L. 223.   6 R. R. 20.   14 A. 105.   24 A. 333.

The motion to dismiss is overruled.

7

State ex rol. Duffel vs. Marks.

ON THE MERITS.

The opinion of the court was delivered by

MANNING, C. J.   The object of this suit is to test the right of the defendant to the office of District Judge of the fourth judicial District. It is alleged that he was elected to that office in November 1876, but that he can not hold it because of ineligibility, not having all of the qualifications prescribed by the Constitution. The special qualification wanting is, that he shall have practised law in this State for two years next preceding his election.   art. 84.

The respondent, after making a general denial, bases his claim to the rightful occupancy of the judgeship upon a "degree of Bachelor of Law, duly conferred by the administrators of the University of Louisiana on the 24th. of April 1872," and in virtue of his election and commission and qualification as district attorney of the same district in 1872, the duties of which latter office he performed from that time until his election as judge.   He alleges that he has practised law in this State for two years next preceding his election, the right to practice being based upon the Degree above mentioned, and the actual practice upon his performance of the functions of prosecuting officer, and upon certificates of clerks of courts and of litigants that he had practised.

It can not be presumed that the organic law, in using the words, "shall have practiced law in this State," can intend any thing but a practice under legal permission.   Those who frame a fundamental law, or any law, can not be supposed to have in contemplation the conferring a benefit in express terms upon a violator of the law.   If therefore a person shall practise law, without first obtaining legal permission and in defiance of prerequisites ordained as of essential compliance, he can not base upon the fact of having thus practised a legal right to do something else, of which a lawful practice is the condition precedent. The certificates of clerks, and the testimony of litigants, that the defendant had practised law for two years is of little consequence, unless they are accompanied by a satisfactory exhibition of the authority from which he derives his legal right to practise.

Nor is the fact of holding the office of District Attorney proof that the holder had 'practised law' in the sense of those words in the Constitution, for the same instrument fails to require that those officers shall be lawyers.   art. 92.   It is argued that the Constitution must necessarily intend *ex vi termini* when it provides for the office of district *attorney*, that he shall be an attorney at law, but it may be answered that the same instrument must equally intend that a parish judge should have been a lawyer, for men must be lawyers before they can in any proper sense be said to be judges, and if it requires a knowl-

edge of law to be a district attorney, how much greater knowledge does it require to administer the succession system of our State.

The defendant's eligibility to the district judgeship depends upon his legal right to have practised law for two years next preceding his election. That right emanates from the proceedings of the Board of Administrators of the University of this State on April 24th. 1872. They shall be copied in full :

" At a meeting of the Board, held this evening, the following preamble and resolutions offered by Mr. Fellows, was adopted by a vote of five to three in the negative, and a motion to reconsider which vote was laid on the table, viz.:

Whereas, the President of the University being present, and having stated that it would be impossible for him to declare which of the rejected students received three favorable votes on the examination by the professors, and which did not ;

Therefore, be it resolved that the degree of Bachelor of Laws be granted to and conferred upon the following members of the class of 1871—72 of the Law department of the University of the State of Louisiana, namely (here follow several names and among them Morris. Marks) and that the President of the University be directed to confer upon them the said degree of Bachelor of Laws, and that the usual diplomas be granted and issued to them. "

The text of the law invoked by the respondent is ;—" The administrators of the University of Louisiana shall have the right of conferring,. under the common seal, on any person whom they may think worthy thereof, all literary honors and degrees known and usually granted by any university or college in the United States or elsewhere.

The degree of Bachelor of Law and Doctor of Medicine, granted by them, shall authorize the persons on whom it is conferred to practice law, physic and Surgery in the State. " Rev. Stats. 1870 Sec. 127.

No diploma was ever issued to the defendant. The President of the University never conferred upon him the degree, as the resolution of the administrators directed. The Board resolved that the degree be granted to and conferred upon him, and to shew that their own construction of the scope of the resolution was, that the act was inchoate, proceeded on the instant and in the same sentence to direct that the additional, and supplemental act be done which was necessary to make the conferring the Degree complete, i. e. the President must confer it.

It is manifest besides that the two clauses of the law above quoted refer to two different kinds of Degrees, one of which is purely honorary and is conferred upon persons already distinguished in some branch of literature, science, or other learning, and the other is conferred upon students who have passed the examination necessary to entitle them to

it. The first of these degrees is to be conferred upon any persons whom the Administrators may think worthy thereof, and it is to be a literary honor, but the last is to have the greater effect of authorizing the recipient to practice law or physic. Can it be reasonably contended, or inferred, that power is thus given to the Administrators to introduce to the public, or rather to impose upon it, a person authorized to prescribe for the ailments of the body who has never read a line nor heard a lecture upon any branch of medicine? If it be true that the degree of doctor of medicine can be conferred by the administrators upon whomsoever they may think worthy thereof, although the recipient may be confessedly without diploma from any Faculty, and if that Degree thus conferred entitles him to practice physic, then an innovation has been made upon the established usages of universities which carries with it dangers of a most appalling character. And the same is of course true in the department of Law.

The statutes upon the subject must be construed together, and as a whole. In fact, the book known to the profession as the Revised Statutes of 1870 is but one Act. That revisal embodies the various laws on this matter under the head of 'Attorney at Law.' Secs. 111–130. The substance of those sections, necessary for consideration now, is as follows ;—Any citizen of the United States, possessing the qualifications of a legal voter, except that of residence, shall be admitted to practice as an attorney at law in any court of this State, upon obtaining a license from the Supreme Court of this State. That Court shall grant licenses to applicants possessing the qualifications already mentioned, 1st. to all graduates of the Law Department of the University who shall produce evidence of good character ; 2nd. to those who shall produce a license from any other State, or a diploma from any law school of any other State with evidence of good character, and who shall have been examined in open Court touching their fitness to practice law in the courts of this State, and who shall have been found qualified ; or who, having a license from a Superior Court of any other State, shall have been examined by one of the judges of the Supreme Court, or by two District judges, and have been found qualified ; 3d. to those who, upon examination before the Supreme Court, according to its regulations, shall have been found qualified.

It is not pretended or alleged that the respondent had or has a license from any other State, or a diploma from any law school of any other State, or that he was ever examined by the Supreme Court and found qualified, and therefore he is not in either the second or third classes. It is not pretended or alleged that he is a graduate of the Law Department of the University of this State, which would entitle him to a license from this court without examination by its members. It is

admitted that he never was licensed by this Court at all—that he never received any diploma from the Faculty of the law school, and it is proved that the degree of Bachelor of Law was not conferred upon him, unless the resolution of the Board of Administrators that that degree be conferred upon him, and the direction to the president to confer it upon him, be held to be equivalent to the actual conferring of the degree.

We do not think a mere transcript of a resolution of the Board of administrators stands in the place of a diploma and a degree, and when sec. 127 enacts that those upon whom the degree of Bachelor of Law has been conferred by the Administrators of the University shall be authorized to practise law, it must be construed with sec. 111 which prescribes that a license from the Supreme Court of the State must be obtained in order to enable any one to practise law, and with Sec. 112 which authorizes graduates of the Law Department of the University to be admitted to practise without examination by the Court, and because they are graduates. And that this construction of Sec. 127 (which is identical with Sec. 1359) is correct, is conclusively shewn by its concluding clause, for immediately after the provision that the degree of Bachelor of Law when conferred shall authorize the person receiving it to practise law, it is enacted that all diplomas granted by the Board shall be signed by the President, and the professors of the department in which *the student* may have graduated. And elsewhere it is enacted that the examination of candidates for their degrees in the medical and law departments shall be under the exclusive control of the Faculty of those departments respectively. sec. 1368.

The respondent was not a graduate of the Law Department of the University. The resolution of the administrators, which is the sole basis of the respondent's right to practise law, shews that he was rejected when he applied to be graduated. "Whereas the President of the University being present, and having stated that it would be impossible for him to declare which of the *rejected* students received " etc. Having been rejected, and being without diploma, without degree, without a license from this Court, the respondent nevertheless insists that he has practised law, as the Constitution requires he shall do for a given time, and is therefore eligible to the office of District Judge. We can not hold that the unauthorized practice of a profession entitles one to its highest rewards and honors, when its lawful practice is a condition or prerequisite of eligibility to them. Some of the members of the convention protested against the adoption of the Judiciary system as is now contained in the Constitution. The short time required for practise as a condition of eligibility to the district judgeship was one of the grounds of protest. The safeguards for the protection of the legal

profession and the judiciary, afforded by the present Constitution, are slender enough. The portals by which admission to the legal edifice is obtained are widened by the Constitution of 1868 beyond former precedent, and we can not enlarge them further without the express mandate of the law. The law has not thus commanded.

We have divested the case of all extraneous matter, of those features which are not essential to be noticed. For instance, Flagg, the former district judge was made one of the relators. On exception, his right to join the district attorney in the action was refused properly, and it remained good upon the relation of the latter officer alone. So, a new trial was prayed on the sworn allegation of the discovery of new and important evidence, and this was improperly refused, but the counsel for the relator in oral argument was content to rest the case upon the evidence received on the trial. The brief of the counsel for the respondent discusses this new evidence, which comes up in the record appended to the motion for a new trial, and from which it appears that the resolution of April 24th. 1872 was rescinded by the administrators on the 10th. of the following month, and it is argued that the Board could not, by thus rescinding their previous resolution, deprive respondent of a right which was vested in him by it. If the new evidence were before us properly we might be of the opinion that this is assuming that the respondent had a vested right upon the mere adoption of the resolution, but it is not necessary that we should pass upon that question.

We think the respondent was and is ineligible to the office of District Judge, and therefore

It is ordered, adjudged, and decreed that the judgment of the lower court is avoided and reversed, and that the respondent Morris Marks is not eligible to the office of Judge of the Fourth judicial District of this State, which office is now declared vacant, and that there be judgment in favor of the relator against the respondent for costs of both courts.

---

## Concurring Opinion.

Marr, J. I do not think it was the intention of the legislature to empower the University of Louisiana to confer the degree of Bachelor at Law or Doctor of Medicine on any other persons than such as had been students and had graduated in the Departments of Law and Medicine respectively.

Universities consist of colleges and departments; and I know of no university which confers the first degree, whether Bachelor of Arts, Bachelor at Law, or Doctor of Medicine, on any other than the students

who have graduated in the academical department, or the law department, or the department of medicine, under its jurisdiction, except the University of London, founded in 1836, which has no schools, or colleges, or halls of its own, or subject to its jurisdiction; and which admits to its degrees such as can pass the rigid examinations which it prescribes, without respect to the schools or colleges in which they may have pursued their studies.

The Act of 1855, Relative to Attorneys, page 121, requires this court to grant license to practice law to graduates of the law department of the University of Louisiana; and this phraseology: " *Graduates of the Law Department,*" is used in all subsequent acts on the same subject.

The Act of 1855, relative to the University of Louisiana, page 420, section nine, authorizes the administrators to confer, under their common seal, on any person whom they may think worthy, "all literary honors and degrees known and usually granted by any university or college," etc.

This evidently empowers the administrators to confer the honorary degrees, which are not dependent on examination, and are complimentary merely.

The next clause of this section provides that the degree of Bachelor at Law and Doctor of Medicine, granted by the administrators, shall authorize the person to practice law, physic, and surgery in this State.

We must refer to other parts of the statute, to ascertain who may be admitted to these primary degrees, Bachelor at Law, and Doctor of Medicine; and we find that the examination of candidates for these degrees is under the exclusive control of the faculties of law and medicine, respectively. Section 18, page 421.

I conclude, therefore, that the administrators have no authority to grant these primary degrees to any other than students who have passed their examination satisfactorily in the one or the other of the departments; and that the latter clause of section nine refers to and means " graduates " in the law department, and " graduates " in the department of medicine; and that the legislature, when in acts relative to attorneys it uses the words "graduates of the law department," does not mean to extend the rights and privileges which it grants to such " graduates " to persons not "graduates" of that department, upon whom the administrators may have chosen to confer honors and degrees.

In my opinion the power of graduation in law or medicine belongs to the faculty of law or of medicine exclusively; and that neither the administrators nor the judicial tribunals can, lawfully, nor do I think they should have power to control the faculties of these departments in the exercise of this discretion, which is wisely granted to them by section eighteen of the act of 1855, section 1368, of the Revised Statutes; and

which is in accordance with the practice of universities in the United States and elsewhere.

I think article eighty-four of the Constitution, which requires, for eligibility to the judgeship of the district court that the person shall have practiced law two years, means that he shall have practiced in virtue of lawful authority, a license granted in conformity to the laws of the State.

It is to be regretted that the students, including defendant, who were refused graduation by the faculty of the law department of the university, if they felt aggrieved, and believed themselves qualified to practice law, did not present themselves for examination to the examining committee appointed by this court. If they had succeeded before that committee they would have been licensed by the court, and would thus have obtained all the substantial benefits of graduation in the law department of the university.

I concur in the decree pronounced by the Chief Justice.

CONCURRING OPINION.

EGAN, J.    I do not think that the possession or exercise of any office for which that qualification is not required constitutes one "learned in the law," in the sense in which it is used in the constitution as a necessary qualification for a district judge.

It is not pretended that the defendant ever obtained a license, *eo nomine*, to practice law either in Louisiana or elsewhere. There is no question in this case of the power, or exercise of the power of the Board of Administrators of the University of Louisiana, to confer honorary degrees of any class upon a person not a student, nor of the effect of such degrees when conferred. The evidence in this record, which is furnished by the defendant himself, shows that he was a student of the University, that he was examined for his degree by the professors constituting the Faculty, and, failing to pass a satisfactory examination, that he was rejected by the Faculty, who refused to recommend him to the Board of Administrators as one qualified to receive his diploma or to sign his diploma in accordance with the law and the usual rules of the University, when a student has passed a satisfactory examination; but that notwithstanding this rejection and failure of the defendant to be pronounced qualified or "learned in the law," by those who are most competent to do so, and *whose exclusive province* it is so to pronounce, the Board of Administrators undertook to pass and did pass a resolution, that his degree be conferred upon him. Upon this resolution alone the defendant rests his right, not only to a diploma, to his degree of bachelor of laws, but he further claims that that resolution of the Board

of Administrators of itself, and without any thing further, constitutes him learned in the law, and entitles him to practice law in all the courts of Louisiana. The law creating the University and regulating its departments and powers, R. S. 1870, sec. 1360, provides that all diplomas granted by them, (i. e. the Board of Administrators) shall be signed by the president of the University, the chairman of the board, *and the professors of the department in which the student may have graduated,* and by such *other officers* of the University as may be provided for by the laws of the University, and that it must be under the seal of the University. Sec. 1359.

This, then, is the evidence of graduation, of a degree conferred, which is contemplated and provided for by law, and which is in contemplation of every student who enters the portals of the University. Can it be said, then, that the degree is complete, and that all the rights and privileges derived from it exist till all this evidence of concurring will on the part of the officers of the University is obtained? If the defendant was really entitled to his degree and to have the diploma executed and delivered to him, when so much depended upon it why did he not present himself before the courts and compel its execution and delivery, and why, if the resolution of the board, upon which alone he relies, had all the effect of the diploma, which it simply directed to be conferred, did he not present himself with it before this court and have *the judicial recognition* of his right to practice law, which the law contemplates, R. S. 111 and 112, in conjunction with which the provisions of article 127 must be read, as they are all on the same subject-matter—parts of the same statute—and must be construed in harmony?

The University of Louisiana was established as an institution of learning, with a faculty of learned men in each department, with a prescribed course of study, in each of which proficiency (i. e.) learning, in which that faculty are made by the very terms and by the evident intent and reason of the law, " exclusive " judges. See R. S. section 1368.

The only power of the administrators, many of whom are not themselves learned in any department, is to grant the diploma after the student shall have passed his examination before the learned professors, and has been by them recommended for his degree. It is true that the Board of Administrators have the duty and power under the law to appoint a president and professors, but once that appointment has been made, that power is exhausted, unless a vacancy occurs, and once they receive their appointments, the independent and exclusive powers and duties of the professors are as clearly established and defined as those of the administrators themselves, of whom as to these powers the faculty is as independent as is the Board of Administrators of them. The very objects and aims of the University would be subverted were the theory

State ex rel. Duffel vs. Marks.

of the defendant to prevail that *the examination* by the faculty means nothing—that the prescribed course of study means nothing—and that a mere whim, a caprice of a board, in large part composed of men not themselves qualified for the task, should be able, against the protest of those who are especially qualified, to confer the honors of the institution upon the faithful and competent and the unfaithful and incompetent student alike. The absurdity of such an argument is apparent. The practice of all institutions of learning is against it, and the particular act of which the defendant claims the benefit was not only without warrant of law, but directly in the teeth of the spirit and letter of the law and a fraud upon it.

For these reasons, in addition to those given in the opinion of the Chief Justice, I concur in the decree in this case.

This opinion is intended to be applicable to both cases versus the same defendant.

---

### DISSENTING OPINION.

DeBlanc, J.  Defendant was elected and commissioned as Judge of the Fourth District of the State—this is admitted. From the month of December 1872, he practiced law in and out of his district—this is established. It is—however—denied that he ever was an attorney at law.

To repel that charge, defendant has introduced in evidence a copy of the proceedings of the Board of Administrators of the University of Louisiana, at a called session held on the 24th of April 1872, and held— I am convinced—to consider and discuss only one subject.

The members of the Board were certainly advised of the cause of that extraordinary session—and, right or wrong, whatever was proposed or done on that occasion, was knowingly proposed, deliberately done. The action of the Board may have been strangely irregular, but can we now avoid that action and destroy its effect?

At that session what did they resolve?  "That the degree of bachelor of Laws be granted to and conferred upon Morris Marks and other students of the University, and that the President of said University be directed to grant said degree, etc.

Had the Board the power to so resolve?  The second paragraph of section 1359 of the Revised Statutes provides "that the degree of Bachelor of laws and doctor of medicine, granted by them, shall authorize the person on whom it is conferred, to practice law, physic and surgery in this State."

Section 1360 ordains "that all diplomas granted by them shall be signed by the President of the University, the chairman of the Board and

the professors of the department in which the student may have graduated."

The last paragraph of Section 1359 refers, in terms which can bear but one meaning, but one construction, to the degree of Bachelor of Laws and doctor of medicine conferred by the Board of Administrators—: Section 1360, to diplomas granted by them, and which—when granted—must be signed as stated.

The first of said sections conveys the not unreasonable impression that any degree may be conferred on any one, by the Board of Administrators ; the very next section seems to restrict their right of granting diplomas to only the students who have graduated in the University.

How reconcile these provisions, unless by holding that—under that as absurd as imperfect legislation, when the Board assumes the important prerogative of conferring a degree, the recipient needs but a certificate of that fact to exercise the chosen profession, and that—when the student has pursued a regular or a special course, when he has been examined and graduates, the diploma granted by the Board shall be signed by the President of the University and others.

The examination of candidates for their degrees in the law and medical departments is under the exclusive control of the faculty of each of those departments—that is eminently proper ; but those faculties are not—as they should be—authorized, by our Statues, to grant degrees or diplomas. According to the letter of the law, their only mission is to either recommend or refuse to recommend the candidates, and to whom ? To the administrators, under whose control and supervision, the University, and all its departments, have been placed by law, to the administrators who alone—it seems—have the power to confer degrees and grant diplomas.

As to the rejection or admission of candidates, is the decision of the faculty a final, an irrevocable decision. Were it dictated by hatred, impatience or injustice—and, in this instance—we are far, very far from presuming that it was, is there no higher authority to which the student could appeal for redress ? Were the rejection as causeless as unjust, were it so regarded by the administrators without exception, by every teacher but one, would they be—either collectively or separately—powerless to defeat an admitted wrong, powerless to enforce a manifest right, powerless to protect, against an acknowledged persecution, the proscribed applicant? Assuredly not.

In May 1872, the Board rescinded the resolution of the twenty-fourth of April, and rejected in a lump those whom the Board itself had admitted by the wholesale. They were twice wrong, apparently at least—for, if they properly admitted, they improperly rejected. Be this as it may ; without specifying the causes which prompted their action, without des-

ignating those of the already admitted candidates against whom those causes existed, the Board could not justly divest and destroy—as to all—a conferred degree and a vested right.

Whatever may have been the motives by which the Board was actuated, we are not at liberty to select between its first and authorized action, and its subsequent and too vague and indefinite contradiction. It had the power to admit, it did admit. It conferred on Morris Marks the degree of Bachelor of Laws, and—under their own grant, he was authorized to practice law in the State. Can we, after more than five years, reverse the first decision of that Board, and maintain its own unexplained reversal of that first decision. I believe not.

To sustain defendant's disputed title, there are four uncontradicted facts, one uncontradicted presumption : the degree of Bachelor of Laws was conferred upon him : he paid as such a license to the State : he has practiced law for more than two years previous to his election : he was elected to the office he claims—these are the facts. Though he could not remember by whom he was sworn, he testified that he took the oath prescribed by law—this is the presumption.

Against him, what is there ? He did not obtain, or failed to procure the diploma which constitutes the evidence of a pre-existing right, the last and perhaps the not indispensable link of the chain of an attorney's title, when that title is granted by the administrators of the State University. What more is there against him? A doubt : the repeal of the April resolution may have been commanded by grave considerations, but those considerations have been neither published, nor proven—and he is entitled to the benefit of that doubt.

I respectfully dissent from the views and decree of the majority of the Court.

---

### DISSENTING OPINION.

SPENCER, J.   It is with regret, and with much reluctance and distrust of my own judgment, that I venture, in so grave a matter as this, to differ with the majority of my brethren, and to dissent from their conclusion—but I am constrained to do so by convictions not hastily formed.

I do not hesitate to say that, in my opinion, no one but an attorney at law can " practice " within the meaning of that article of the constitution which fixes the qualifications of district judges ; and that, therefore, none but *attorneys at law* can be district judges.

Nor do I hesitate to say, that the fact of one having been district attorney *does not* make him an attorney at law, and does not give him,

therefore, the qualifications for the district bench. One does not become an attorney at law by or through being district attorney. That is not one of the modes prescribed of becoming an attorney at law.

If, therefore, the defendant was an attorney at law, and if he practiced as such for two years preceding his election, as judge of the district court, there remains no other basis for his pretensions than the action of the Board of Administrators of the University of Louisiana, conferring on him the degree of Bachelor of Laws. The first inquiry which naturally presents itself is, did that Board have the power to confer said degree?

Section 1359, Revised Statutes, page 269, says : " They (the Administrators) shall have the right of conferring under their common seal, on any person whom they shall think worthy thereof, all literary honors and degrees known and usually granted by any university or college in the United States or elsewhere. The degree of Bachelor of Laws and Doctor of Medicine granted by them shall authorize the person on whom it is conferred to practice law, physic, and surgery in this State."

If there is not imposed elsewhere some qualification or restriction of the power here conferred, I do not see how it is possible to doubt its plenary and absolute character. The first clause of the section gives the Board power to confer " *on any person whom they shall think worthy thereof all literary honors and degrees* known and usually granted by any university or college in the United States or elsewhere." The second clause of the section declares that "the degree of Bacheler of Laws * * * *granted by them, shall authorize* the person on whom it is conferred to practice law * * * in this State." Now it is matter of no moment whether the degree of "Bachelor of Laws" is a "literary degree" or not; for the power to confer both "literary degrees," *and* the "degree of Bachelor of Laws" is expressly and unmistakably given. So whether the latter is a subdivision of the former, or independent of it, makes no sort of difference.

Is this power to confer "literary degrees and honors" and the degree of "Bachelor of Laws" restricted or modified by other sections of the law? We are told that the power to confer "literary degrees" *is not*, but that the power to confer the degree of "Bachelor of Laws" is qualified and limited by section 1360, which provides how diplomas shall be signed. But is not a diploma as essential to the conferring of a "literary degree" as to that of the "degree of Bachelor of Laws?" and if this section, providing that diplomas shall be signed by certain officers, operates a restriction upon the power to confer the one degree, why not upon the power to confer all other degrees? I do not regard this section as operating any restriction upon the power of the Board in either case. A diploma is simply evidence of the grant. If the law gives the Board

authority to grant these degrees, and then directs that as evidence of the grant, certain officers of the university shall sign a diploma, these officers could not legally withhold their signatures. Their act in signing would be purely ministerial, and they could no more refuse to perform it than the clerk of this court could refuse to attest and verify an order or decree of this court.

I do not intend to assert that the members of the faculty are in fact obliged to sign a diploma for a decree conferred by the Board under the circumstances of this case. I rather think that their duty to do so is confined to the cases where they have examined and recommended candidates to the Board. I think it is too clear for argument that section 1368 in no wise qualifies the power of the Board in the matter under discussion. It simply gives the faculty the exclusive control of " the requisites for admission " (to the university of course), " the examination of candidates for their degrees " (referring of course to those who claim degrees *as students*), " the management of the pecuniary concerns, the salaries of the professors, and the tuition and terms of admission."

I conclude, therefore, that the Board of Administrators had the unqualified and absolute power of conferring " all literary degrees," as well as that of "Bachelor of Laws;" and *that* whether "Bachelor of Laws" is a " literary degree " or not—a point upon which I do not deem it necessary to express any opinion. It being therefore clear, in my opinion, that the Board had the power to confer on the defendant the degree of Bachelor of Laws, the next inquiry is, did it do so ?

On the twenty-fourth of April, 1872, it passed the following resolution:

Be it resolved, that the degrees of Bachelor of Laws BE GRANTED TO AND CONFERRED UPON the following members of the class of 1871-1872 of the Law Department of the University of the State of Louisiana, namely : Morris Marks and others. And that the president of the university be directed to confer upon them the said degree of Bachelor of Laws, and that the usual diplomas be granted and issued to them.

A true copy.

[Extract from the minutes.]

Signed :                                                  H. R. SCHMIDT,
                                                    Secretary Administrators.

This language is certainly not ambiguous. It confers " the degree of Bachelor of Laws " upon Morris Marks, without " proviso " or " qualification." It does not *request* but *directs* that the president of the university confer that degree upon him and that a diploma " be granted and issued " to him.

The board by that resolution exhausted its power. It conferred the degree. It performed the legislative or judicial function. The neglect or refusal of the president to *formally* confer, announce, or deliver the

evidence of the grant could not have the effect of destroying the grant—the decree itself. I do not undertake to say that it was the duty of the president to comply with this order of the Board—for I think it might be plausibly argued that his duty in that regard was confined to graduates of the university. But I do say, that, if the Board had the power to confer the degree, and if it was the president's duty to deliver the evidence of it, his performance or non-performance of that duty could in no way affect the validity of the action of the Board. The diploma is but the evidence in convenient form: of the fact that a degree has been conferred. It is but the evidence of a right, and not the right itself. It neither increases nor diminishes the extent or enjoyment of the right, which exists independently of it.

Whether the law conferring this power on the Board is wise or unwise, and whether the Board, in the exercise of its power in this particular instance, acted judiciously, are questions with which this court has nothing to do. This power, this discretion, had to be lodged somewhere; and like all other human authority it is liable to abuse. The law makes the Board the judge of *the worthiness* of those on whom it confers degrees. In my opinion its decision does not admit of review by any other authority upon that point. I say this, not because there has been any attempt in this case to show that the defendant was unworthy, but simply to meet that branch of the argument which is predicated upon the supposed impropriety of allowing men (who may not themselves be learned in the law) to admit persons to that profession.

If the Board had the power to confer, and did confer, on the defendant the degree of Bachelor of Laws, it is manifest that it could not by an *ex parte* and subsequent revocation deprive him of the grant or of any rights or franchises flowing from it. See *ex parte* Garland, 4 Wallace, page 347. This view renders unnecessary any discussion of the motion of the plaintiffs for new trial.

Having, as I think, shown that the defendant lawfully held the degree of Bachelor of Laws, the next inquiry is, what rights and privileges did it confer upon him? The law (sec. 1359 R. S.) answers the question. It "shall authorize the person on whom it is conferred *to practice law in this State.*"

What, if any, conditions precedent are imposed upon this authority to practice law? In my humble opinion there is but one, and that is that he take the oath prescribed. Did he take the oath is the next question? It must be borne in mind that that oath can, admittedly, be taken before any judge, justice of the peace, or clerk of court in the State—they being "authorized to administer oaths in all cases." The defendant swears that to the best of his recollection he did take the oath. True, a copy of the oath is not produced, but the defendant's statements

were admitted *without objection, and are uncontradicted.*  We think this ought to be accepted, at least as *prima facie* proof—especially when coupled with the legal presumption resulting from, a continuous and, so far as appears, undisputed possession of the status and practice of an attorney at law for four years preceding his election as judge.

But it is argued that there was a further condition imposed by law before he could practice :  That it was necessary for him to obtain a license from the Supreme Court.  Sections 111 and 112 of the Revised Statutes are cited as authority for this proposition.  Those sections are in substance as follows :

Section 111.—Any citizen of the United States possessing the qualifications (except that of residence) necessary to constitute a legal voter, shall be admitted to practice as an attorney at law, etc., upon obtaining a license from the Supreme Court.

Section 112.—The Supreme Court shall grant licenses to applicants . possessing the qualifications required by the preceding section ; first, to *all graduates* of the University who shall produce evidence of good character; second, when they produce a license to practice law from any other State of the Union—or a diploma from any law school, etc., with evidence of good character, and shall have been examined in open court touching their fitness, etc., and are found qualified; third, when the applicants have been found qualified to practice law, etc., by an examination before the Supreme Court according to such rules and regulations as it may adopt from time to time.

I quote, also, section 113—"Any foreign lawyer, on presenting his license to any one of the justices of the Supreme Court, or to any two district judges with evidence of character, etc., who, after being duly examined, etc., shall be by said judges *licensed* to practice law in any and all courts of this State," etc.

Now do sections 111 and 112, fairly interpreted, convey the idea that *no one can practice* law without a license from the Supreme Court?

Section 111 simply declares that "any citizen" upon obtaining a license from this court "shall be admitted to practice as an attorney at law," etc.  In other words, a license from this court shall be a sufficient authority to the holder to practice.  But is that saying that *no one* shall practice *except he have the license of this court?*  Surely not, for that would put section 111 in direct conflict with section 113, which says in substance that any foreign attorney shall be entitled to practice upon obtaining a license from two district judges or any justice of this court. And I submit such a construction of section 111 would also put it in conflict with section 1359, which declares that the holder of the degree of Bachelor of Laws, conferred by the Board of Administrators, shall have thereby authority (license) to practice law in this State.  There is

no more reason for requiring that the holder of such degree should obtain a license from this court than there is for requiring it from the foreign attorney admitted by two district or one supreme judge. I do not understand that any one pretends that it is necessary in this last case. Yet if you give section 111 the interpretation contended for by making a license from this court an indispensable prerequisite to the right of practice, it covers *all cases*, and there are scores of lawyers in this State to-day who are practicing *illegally* under the belief that two district judges could examine and license them.

But it is also urged that under section 112 the defendant must have obtained a license from this court. I do not so understand that section. It declares that this court shall license, first, graduates of the University on proof of good character; second, those who produce a license from other States, or a diploma from other schools with evidence of good character; and, third, those who have been examined by this court and found qualified under such rules as it may adopt.

Now the defendant does not fall within or claim to practice under either of the three classes named. He does not claim to be a graduate of the university, or of any foreign law school, or to hold a license from any other State, or to have been examined by this court.

To my mind the conclusion is irresistible, that under certain given conditions and circumstances there are *three modes* provided by law for admission to the bar, and to the right to practicing law in this State:

First—By a license from this court. Sections 111 and 112, R. S.

Second—By a degree of Bachelor of Laws conferred by the Board of Administrators of the University. Section 1359.

Third—By examination and license of two district or one supreme judge, when the applicant is a foreign attorney. Section 113.

There is no law for saying that any one of these powers is subordinate to the others. They are, in their respective cases, sovereign and independent.

I think the defendant possessed the qualifications required by the constitution for district judge, and therefore that the judgment of the court *a qua* should be affirmed.

I therefore dissent from the decree in this case.