.THE STATE OF KANSAS v. HORACE L. WILSON.

**No. 11,700.**  (60 Pac. 1054.)

PHYSICIANS— *Statutory Regulations Construed.*   Under chapter
68 of the Laws of 1870 (Gen. Stat. 1897, ch. 100, §§ 392, 393; Gen.
Stat. 1899, §§ 2302, 2303), enacted "to protect the people from
empiricism, and to elevate the standing of the medical profession,"
a person of good moral character, who had practiced medicine
continuously for ten years or more before the taking effect of the
act, is deemed to be qualified and to have complied with its pro-
visions, but continuous practice for ten years in violation of law,
after the act was passed, confers no right or authority on the
practitioner.

Appeal from Ellis district court; LEE MONROE,
judge.   Opinion filed May 5, 1900.   Reversed.

*A. A. Godard,* attorney-general, and *James T. Nolan,*
county attorney, for The State.

*David Rathbone,* for appellee.

The opinion of the court was delivered by

JOHNSTON, J. :   An information was filed charging
Horace L. Wilson with practicing medicine in Ellis
county without having graduated in a school of medi-
cine or having obtained a certificate of a medical so-
ciety as to his qualifications ; and further, that he had
not been continually engaged in the practice of medi-
cine in the state for a period of ten years or more
prior to May 12, 1870.   A motion to quash the infor-
mation was sustained by the court, and the question
involved was reserved by the state and brought here
by appeal.   The act under which the prosecution was
brought became a law May 12, 1870, and it provides :

"That it shall be unlawful for any person within
the limit of the state of Kansas, who has not attended
two full courses of instruction and graduated in some

respectable school of medicine, either of the United States or of some foreign country, or who cannot produce a certificate of qualification from some state or county medical society, and is not a person of good moral character, to practice medicine in any of its departments for reward or compensation, for any sick person within the state of Kansas : *Provided*, that in all cases, when any person has been continuously engaged in the practice of medicine for a period of ten years or more, he shall be considered to have complied with the provisions of this act, and that where persons have been in continuous practice of medicine for five years or more shall be allowed two years in which to comply with such provisions." (Laws of 1870, ch. 68, § 1.)

The trial court held that it was not the intent of the legislature to limit the exception embodied in the proviso to ten years of continuous practice prior to the passage of the act, but that the provision was satisfied by ten years of continuous practice before the defendant's right was challenged by the prosecution. No question is raised as to the validity of the act, but a controversy has arisen as to what is the proper interpretation of its provisions. The title, which to some extent indicates its purpose, is " to protect the people of Kansas from empiricism, and to elevate the standing of the medical profession." The evident intent of the legislature was that thereafter only those of the profession who were moral, competent and skilful according to the prescribed standard should be permitted to practice in the state. Until that time no test of qualifications was made nor statutory restrictions imposed upon the profession, but it was manifestly the legislative purpose to prohibit from that time forth the practice of medicine by any one who had not graduated from a respectable school of medicine or obtained a certificate of qualification from a medical

society, or had then been engaged in the continuous practice the prescribed time.   The practice of medicine by one who had not conformed to any of these requirements would be not only unprofessional and dishonest, but it would constitute a public offense. Can it be that the legislature intended that a person might qualify himself for the practice by doing that which the act itself prohibited?   Is the direct and persistent violation of the law to be deemed the equivalent of the character, education, experience and skill which the statute requires for the protection of life and health?

It will be noticed from the language of the act that it was given a present application to the persons named in the exception — that is, the exception is applied " to any person who *has .been* continuously engaged in the practice of medicine for a period of ten years or more "— and not to some one who might thereafter practice that period of time in defiance of law. While this form of expression indicates to some extent the legislative intent, it is not regarded as a controlling consideration.   The second exception of persons in the proviso is an additional evidence that reference was made only to those who were engaged in the practice when the act took effect.   It provides that " where persons have been in the continuous practice of medicine for five years or more they shall be allowed two years in which to comply with such provisions." When does the two-year period of preparation begin? Was it when the law was enacted, or ten, twenty or thirty years thereafter, when some one who had transgressed the law for five years was arrested?   It cannot have been the purpose that such a lawbreaker, when brought to account or overcome with contrition, can claim immunity for two years and relieve himself

from punishment by beginning the study of medicine or starting in pursuit of a diploma or certificate of authority.     Evidently it was intended to protect those who had been in good faith engaged in the practice and in the exercise of a legal right, by giving them the period of two years after the passage of the act in which to fit themselves and fully comply with its requirements.

The strongest consideration, however, is that the authority or right to practice medicine cannot be builded on wrong and crime.     It is a general rule that persons committing crime cannot claim its fruits or gain any benefit from its commission.     (*The State, ex rel., v. Cross*, 38 Kan. 696, 17 Pac. 190.)     In *Underwood v. Scott*, 43 Kan. 714, 23 Pac. 942, where this statute was under consideration, it was said :

"The object of this law, doubtless, was to prevent unauthorized and unqualified persons from practicing medicine in any of its branches.     The right to practice the calling of a physician is, by this statute, taken from certain unqualified persons, and the statute should not be so construed as to give a person the privilege of exercising a right which is in violation of any of its provisions."

According to the opposite theory, one who practices medicine nine years and eleven months in violation of law would be a criminal and subject to punishment, but, if he added another month of violation, he would become a qualified and legal practitioner.     An essential qualification under the statute is good moral character, and should we impute to the legislature the intent that physicians may reach the legal standard of qualification by immorality and unprofessional conduct?     It is said that ten years of experience prior to the enactment of the law is treated as the equivalent of a diploma of a school or the cer-

tificate of a medical society, and the inquiry is made why the legislature would not regard ten years of experience after the passage of the law as an equal assurance of qualification. The one who practiced before the enactment of the law was exercising a legal right, while the one who practiced thereafter was engaged in the commission of a crime; and if, from the language of the act, there is any doubt whether reference was made to periods of practice before or after the passage of the law, we must infer a meaning and a test involving action lawfully taken, rather than that which would constitute a crime.

Attention is called to the interpretation of a similar statute by the supreme court of Ohio, in which a contrary view was taken. (*Wert v. Clutter*, 37 Ohio St. 347.) The decision, however, was made by a divided court, and the reasoning of the two dissenting judges is the more convincing and satisfactory to our minds.

The view which we have taken cannot operate as a hardship, and regulations of this character which so closely concern the preservation of the lives and health of the people are most wise and salutary. The statute cannot create an aristocracy of college graduates or give them a monopoly of the practice of medicine in the state. Persons not graduates of medical schools, who are of good moral character and possessed of the necessary learning, skill and experience, may go before a medical society of the state and obtain a certificate authorizing them to practice.

Our conclusion is that the information charged a public offense, and that the motion to quash should have been denied. The judgment of the district court will be reversed and the cause remanded for further proceedings.