No. 19,119.

CHARLES W. GREEN et al., *Plaintiffs*, V. GEORGE H. HODGES, as Governor, etc., *Defendant*.

SYLLABUS BY THE COURT.

1. MANDAMUS—*To Compel Appointment of Board of Chiropractic Examiners—Writ Denied.* Chapter 291 of the Laws of 1913, relating to the practice of chiropractic, and creating a board of chiropractic examiners, does not require the governor to appoint upon that board persons who have not complied with the statutes regulating the practice of medicine and surgery.

2. SAME. By the power vested in the governor to fill vacancies, he is authorized to appoint the two other members of the board provided for in the statute referred to, whenever three properly qualified chiropractic members are appointed, although the statute does not declare how such other members shall be chosen.

Original proceeding in mandamus. Opinion filed February 7, 1914. Writ denied.

*George S. Evans*, of Greenwood, Ark., and *Willard Carver*, of Oklahoma City, Okla., for the plaintiffs.

*John S. Dawson*, attorney-general, for the defendant; *F. P. Lindsay*, of Topeka, of counsel.

The opinion of the court was delivered by

BENSON, J.: The plaintiffs ask that the governor be required by mandamus to appoint a board of chiropractic examiners under the provisions of chapter 291 of the Laws of 1913, relating to the practice of chiropractic.

The first section of the act declares:

"That there is hereby created and established a board to be known by the style and name of the state board of chiropractic examiners, said board shall be composed of one ordained minister, one school teacher, and three

Green v. Hodges.

(3) practicing chiropractors of integrity and ability, who shall be residents of the state of Kansas, and shall have practiced chiropractic continually in the state of Kansas for a period of not less than two (2) years. No two chiropractic members of said board shall be graduates from the same school or college of chiropractic."

Section 2 requires the governor to appoint, as members of the board, three chiropractors who shall possess the qualifications specified in section 1, but makes no provision for the appointment, election or selection otherwise of the minister or school teacher to be the other members of the board.

The plaintiffs aver that they are engaged in the practice of chiropractic, are graduates of schools and colleges of chiropractic, possess the necessary qualifications, and are desirous of obtaining a certificate to practice chiropractic in the state; and that there are many others for whom they also appear, who are also entitled to such certificates. They pray that the governor, who has refused to act, be required to "appoint said board of chiropractic examiners as per said law."

The governor, in giving the matter consideration, asked and obtained the opinion of the attorney-general, in which that officer advised that there was such ambiguity in the statute that action by the governor ought not to be taken.

It is not stated in the petition that the plaintiffs or any of the persons represented by them have complied with the statutes relating to the practice of medicine and surgery, although their practice required such compliance. The statute referred to, before its amendment in 1913, declared that:

"From and after the 1st day of September, 1901, any person who shall practice medicine and surgery or osteopathy in the state of Kansas without having received and had recorded a certificate under the provisions of this act, or any person violating any of the provisions of this act, shall be deemed guilty of a mis-

demeanor, and upon conviction thereof shall pay a fine of not less than fifty dollars nor more than two hundred dollars for each offense." (Gen. Stat. 1909, § 8091.)

The amendment of this section consisted only in the omission of the words "or osteopathy." (Laws 1913, ch. 290, § 11.) That a certificate, as provided in the act from which this quotation is made, was a condition precedent to the right to·practice chiropractic in this state was settled in *The State v. Johnson,* 84 Kan. 411, 114 Pac. 390, and adhered to in *The State v. Peters,* 87 Kan. 265, 123 Pac. 751, and *The State v. Cotner,* 87 Kan. 864, 127 Pac. 1, and is therefore not an open question. As the practice of chiropractic without such a certificate is a criminal offense, the petition which alleges such practice for two years shows upon its face violations of the law; and a criminal prosecution might be instituted for each specific act of practice defined in the statute (*The State v. Cotner,* supra), unless it should be presumed, without any averment of the fact, that the plaintiffs and others for whom they sue had such certificates. It will be observed that in passing the statute creating a chiropractic board the legislature did not attempt to condone past offenses, or relieve violators of the existing law in any way from its penalties. Assuming that the plaintiffs and others in the same situation have no such certificates, can this action be maintained?

The governor by constitutional mandate is charged with the duty to see that the laws are faithfully executed. It is suggested that it is inconsistent with this high duty to require him to reward with office under one law those who have persistently broken another law upon the same general subject, which it is his equal duty to enforce. It is not necessary, however, to decide whether this should be required, for we are persuaded that it was not within legislative contemplation that he should do so. It is entirely reasonable to suppose that it was intended that he should appoint the

Green v. Hodges.

chiropractors upon the board from those who had complied with the statute regulating the profession of medicine and surgery. There is no necessary conflict in these provisions. Indeed, the act under which these appointments are sought seems to recognize the requirements of the previously existing law, for section 6 (*b*) contains this proviso:

". . . Provided, that applicants for license under this act shall be required to pass the same examination in physiology, anatomy, hygiene and systomatology required of licensed practitioners of medicine and surgery in this state." (Laws 1913, ch. 291, § 6, subdiv. *b*.)

Whether the clause quoted refers to an examination by the same board licensing practitioners of medicine and surgery or by the board created by this act is not clear, and is not important to the present inquiry. The important fact is that chiropractors must pass an examination upon the subjects named the same as other practitioners in medicine and surgery. It is a well-settled rule that different statutes relating to the same subject are to be construed together. (*The State v. Young,* 17 Kan. 414.)

"Statutes are to be regarded as forming parts of one great and uniform body of law, and are not to be deemed isolated and detached systems complete in themselves." (*Robertson v. The State, ex rel. Smith,* 109 Ind. 79, 87, 10 N. E. 582, 643.)

The subject treated in the several statutes referred to, including the act of 1913, is the regulation of the practice of medicine and surgery. That this includes the method of treatment called chiropractic is settled by the Johnson case, and is recognized by the statute of 1913, under which these appointments are sought, wherein chiropractors are prohibited from performing "any minor surgery, only as hereinbefore stated." (Laws 1913, ch. 291, § 6, subdiv. *c*.)

We have not only the elementary rule of construction referred to, but we have in the statute of 1913 this express reference to, and adoption of, a provision of the prior law, clearly indicating that the legislative intent was to draw to the aid of this last statute the provisions of other laws then in effect, regulating the general subject of medicine and surgery, which are not repealed or modified by the new statutory enactment.

The attorney-general presents a further reason why the governor has not appointed the three chiropractors on this board, and that is that he was not given power to appoint the two other members. No insurmountable obstacle, however, is found here. If the chiropractors should be appointed the board would then lack two members, and vacancies would therefore exist which might be filled by executive appointment. The statute in question in section 2 provides that the governor shall fill all vacancies. It was said in *The State v. Holcomb,* 83 Kan. 256, 111 Pac. 188, that:

"An existing office without an incumbent is vacant. After the legislature created the office it was vacant until the appointment was made. . . . The decisions are in practical harmony upon this proposition, and the parties do not disagree about it." (p. 258.)

A general statute long in force also confers this authority concerning vacancies in state and county offices. (Gen. Stat. 1909, § 3178.) The appointments to these places, however, would serve no good purpose until three chiropractors can be appointed, for a minority of the proposed board would have no power to act. (Gen. Stat. 1909, § 9037, subdiv. 4.)

While the petition does not disclose that the plaintiffs, or others represented by them, were authorized to practice medicine and surgery during the two years of their practice, as chiropractors, it will not be assumed that there are no chiropractors in the state otherwise qualified who held certificates to practice medicine and surgery. Nor will it be assumed that

there are properly qualified chiropractors who held such certificates during the period referred to. The statutes being now construed and the law applicable to this matter settled, it is presumed that the governor will make the appointment if it should be made to appear that properly qualified persons are available.

The writ will not be allowed.