[S. F. No. 10918. In Bank.—March 18, 1924.]

THE PEOPLE, etc., Respondent, v. RAY S. LA BARRE et al., Appellants.

[1] CHIROPRACTIC ACT — STATUTORY CONSTRUCTION — INTENT. — The initiative measure approved at the general election held November 7, 1922, effective December 21, 1922 (Stats. and Amendts. 1923, p. lxxxviii), creating a board of chiropractic examiners to be appointed by the Governor, was intended to accomplish the same object that all general health laws are designed to accomplish, and is *in pari materia* with all other acts regulating the same general subject.

[2] ID.—BOARD OF CHIROPRACTIC EXAMINERS—ELIGIBILITY TO APPOINTMENT—KIND OF PRACTICE—CONSTRUCTION OF ACT.—The initiative measure (Stats. and Amendts. 1923, p. lxxxviii), creating a state board of chiropractic examiners, section 1 of which in part provides that "Each member of the board first appointed hereunder shall have practiced chiropractic in the State of California for a period of three years next preceding the date upon which this act takes effect, thereafter appointees shall be licentiates hereunder," contemplates the holding of a license under the Medical Practice Act as a prerequisite for eligibility on the part of an appointee to membership in said board, the practice referred to in said section meaning such as was recognized by existing laws,

and the concluding phrase, "thereafter appointees shall be licentiates hereunder," meaning that thereafter only such persons as were licensed under the initiative measure would be deemed to possess the required qualifications.

[3] STATUTORY CONSTRUCTION — ELEMENT OF LAWFULNESS. — Lawfulness is a fixed element which inheres in every statute; it is fundamental principle of law that a right cannot be founded upon a wrong.

[4] ID.—CURATIVE OR PALLIATIVE STATUTES—INTENT.—Under curative or palliative statutes, enacted under peculiar or pressing circumstances, to enable a wrongdoer to adjust himself to the law's requirements, the intent to condone the offense must clearly appear.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. F. Rose, Raymond Benjamin and Frank B. Austin for Appellants.

Frank V. Kington, Glensor, Clewe & Van Dine, U. S. Webb, Attorney-General, and Leon French, Deputy Attorney-General, for Respondent.

Norman E. Malcolm, *Amicus Curiae.*

SEAWELL, J.—This is a proceeding in *quo warranto* instituted by the people of the state of California, upon the relation of George D. Gillespie, to remove from office, on the ground of ineligibility, the five members of the state board of chiropractic examiners appointed by the Governor of the state acting, it is claimed, within the power conferred upon him by the initiative measure approved at the general election held November 7, 1922, effective December 21, 1922 (Stats. and Amendts. 1923, p. lxxxviii).

The trial court found said appointees to be wanting in the legal qualifications necessary to entitle them to occupy the respective offices to which they had been appointed and this appeal is taken from the judgment and order entered by said court declaring said appointees ineligible for membership in said state board of chiropractic examiners and removing them from office.

Section 1 of said act provides:

"A board is hereby created to be known as the 'state board of chiropractic examiners,' hereinafter referred to as the board, which shall consist of five members, citizens of the State of California, appointed by the governor. Each member must have pursued a resident course in a regularly incorporated chiropractic school or college, and must be a graduate thereof and hold a diploma therefrom.

"Each member of the board first appointed hereunder shall have practiced chiropractic in the State of California for a period of three years next preceding the date upon which this act takes effect, thereafter appointees shall be licentiates hereunder. . . . "

It is a fact admitted in the case that none of the five members of the board of chiropractic examiners appointed under the initiative or chiropractic act was ever the holder of a license or certificate issued by the state medical board to practice either as a physician and surgeon or as a drugless practitioner. In fact, it is admitted that all treatments administered by them or either of them to the sick or to those who applied for any sort of treatment for a period of three years next preceding the date upon which the initiative act went into effect was done without authority of law and in violation of law. It is also stipulated that at the time said initiative act went into effect there were ninety-one persons lawfully qualified to practice within the state as chiropractors and who had been actually engaged in such practice for the full term required by the act. Such authority is conferred by the Medical Practice Act (Codes and General Laws 1917–21, p. 1607), which provides that any person holding a drugless practitioner's certificate or a physician and surgeon's license is entitled to practice the chiropractic form of treatment. To assume to practice without such a certificate or license was an offense against the state.

The question of the eligibility of said appointees to membership in the "board first appointed" turns largely upon the meaning of the language of the act, which provides that each member "shall have *practiced chiropractic* in the State of California for a period of three years next preceding the date upon which this act takes effect, *thereafter* appointees shall be *licentiates hereunder.*" (Italics ours.)

It is appellants' position that the act recognizes persons as eligible to appointment to said office who had practiced chiropractic for a period of three years next preceding December 21, 1922, without having obtained a license or a certificate so to do from any board or legally constituted authority whatsoever, and whose right to exercise administrative authority must, therefore, rest upon the doing of a series of acts which, during the period covered by their commission, were denounced as public offenses and which acts, by the express provisions of the initiative measure under which the present right is asserted, are also declared to be offenses against the law.

Respondents, on the other hand, take the position that the act contemplates the appointment to office of persons who had lawfully engaged in the practice of chiropractic methods under a certificate or a license issued by competent authority only. It is not disputed that neither the state Medical Act nor the initiative act permits any person to engage in the practice of medicine or surgery or the treatment of the sick in any form without a certificate or license so to do. The position of appellants is that the initiative act is *sui generis* and stands unrelated to any other law regulating the treatment of the sick and no reference or recourse may be made to general laws as aids to the interpretation of the act. This claim is untenable. [1] The act was intended to accomplish the same object that all general health laws are designed to accomplish. It is undoubtedly *in pari materia* with all other acts regulating the same general subject. "It is a well settled rule that different statutes relating to the same subject are to be considered together. *State* v. *Young,* 17 Kan. 414. 'Statutes are to be regarded as forming part of one great and uniform body of law, and are not to be deemed isolated and detached systems, complete in themselves.' *Robertson* v. *State ex rel. Smith,* 109 Ind. 79, 87 [10 N. E. 586]." (*Green et al.* v. *Hodges,* 91 Kan. 658 [138 Pac. 605].) "When two or more statutes, whenever passed, relate to the same thing or the same class of things or to the same general subject matter, they are *in pari materia* and are to be construed as forming a unitary system and as one statute." (*People ex rel. Doscher* v. *Sisson,* 222 N. Y. 387 [118 N. E. 787]. See also, *Town of Highgate* v. *State,* 59 Vt. 39 [7 Atl. 898];

*Gleason* v. *Spray,* 81 Cal. 217 [15 Am. St. Rep. 47, 22 Pac. 551]; *In re Madalina,* 174 Cal. 693 [1 A. L. R. 1629, 164 Pac. 348]; *Alexander* v. *Lowrance,* 182 N. C. 642 [109 S. E. 639].)

The language of the act itself furnishes convincing proof that it and the Medical Practice Act are to be construed, so far as consistent, *in pari materia.* Section 18 thereof provides that nothing therein shall be considered as repealing the "Medical Practice Act" of June 2, 1913, or any subsequent amendment thereto, except in so far as said act or its amendments may conflict with the provisions of the initiative act as applied to persons licensed under the latter act, to which extent any and all acts in conflict with the initiative act are repealed. Section 13 seems to dispose of the question in these words: "Chiropractic licentiates shall observe and be subject to all state and municipal regulations relating to *all matters pertaining to public health,* . . . and make reports as required by law to the proper authorities, and such reports shall be accepted by the officers of the departments to which the same are made." (Italics ours.) The act provides for a high standard of ethics and very closely follows in this respect and in procedural regulations the Medical Practice Act. **[2]** We think it cannot be affirmatively shown by an examination of the act that it was the intention of the framers, or, indeed, the supporters of the act to induct into the practice of medicine or the art of healing and treatment of the sick such a radical change in existing laws as to requite with reward the things which were condemned as offenses against the state. The fact that the statute by its own words denounces the acts upon which it is sought to establish a legal right furnishes a forceful argument against the claim that the measure intended to qualify persons for appointment to places on the board who had practiced chiropractic without having obtained a license so to do, notwithstanding the fact that there were persons available whose eligibility could not be questioned. Appellants place special significance upon the italicized words of the following sentence: "Each member of the board first appointed hereunder shall have practiced chiropractic in the State of California for a period of three years next preceding the date upon which this act takes effect, *thereafter appointees shall be licentiates hereunder.*" (Italics ours.)

The implication which arises from the above-quoted language more strongly favors the interpretation that the *practice* therein referred to is meant such as was recognized by existing laws, but that *thereafter* only such persons as were licensed under the initiative act would be deemed to possess the required qualifications, than the interpretation contended for by appellants.

The word "practice" means, of course, engagement in the treatment or healing of the sick in accordance with the rules which the state in the exercise of the police power has prescribed. It is not necessary to read into the act, as appellants so vigorously insist, the word "lawful" or "legal" before the word "practice" in order to justify the conclusion that the act contemplates the holding of a license under the Medical Practice Act as a prerequisite for eligibility on the part of an appointee to membership in said board. [3] Lawfulness is a fixed element which inheres in every statute. It is a fundamental principle of law that a right cannot be founded upon a wrong. [4] Curative or palliative statutes, enacted under peculiar or pressing circumstances, to enable a wrongdoer to adjust himself to the law's requirements are not altogether unknown to legislative history. But, generally, if not universally, such statutes have exacted of such person that he submit himself to an examination or otherwise prove his qualifications. In all such cases, however, the intent of the statute to condone the offense must *clearly appear*.

But, without resorting to rules of statutory construction, it seems clear to us that the first meaning that the average person would give to the word "practice," as used in an act applying to a practitioner of medicine and surgery, or to others employing any of the methods of treatment recognized by the state, is that such practitioner should possess all of the qualifications required by law and shall have complied with all rules governing such practice.

The above italicized clause means just what its simple language imports, to wit, three years' practice in conformity with the standard fixed by law. How is the state to know whether applicants for appointment possess the standard qualifications except by applying its legal test? The act is silent as to any method or procedure by which qualification is to be otherwise determined. This being so, indicates

that the standard fixed by law must be the only true criterion of qualification.

Appellants argue that section 8 of the act cannot be rationally construed on any other theory than that it means to recognize unlawful or unlicensed practice in creating its standard of qualification for membership in said board. It is suggested that if "practice" means "lawful practice," there would be no occasion to license those who hold certificates under the Medical Practice Act. Our conclusion is neither at variance with nor inconsistent with the language of said section.

Sections 5, 6, 7, 8, 9, and 10 deal with the schedule of minimum educational requirements established by the act and also with the examination of applicants for license thereunder. These sections are confined solely to the issuance of licenses to practice *chiropractic* under the provisions *of the initiative act.* Section 1 deals with the qualifications for membership in the first and succeeding boards.

Section 8 provides as follows:

"Any person who shall have practiced chiropractic for two years after graduation from a chiropractic school or college, one year of which shall have been in this state preceding the date upon which this act takes effect or any person who graduated from a chiropractic school or college prior to January 1, 1922, and who shall present to the board satisfactory proof of good moral character and having pursued a resident course of not less than two thousand hours in a legally incorporated chiropractic school or college, shall be given a practical and clinical examination in chiropractic philosophy and practice, and if he, or she, make a grade of seventy-five per cent in such examination, the board shall grant a license to said applicant to practice chiropractic in this state under the provisions of this act; . . . "

It will be observed that a license issued under the initiative or chiropractic act confers a higher mark of learning and efficiency upon its holder than does a drugless practitioner's certificate issued under the Medical Practice Act. The minimum educational requirements of the chiropractic or initiative act calls for a course of study embracing the same subjects as the Medical Act, but it extends over a period of two thousand four hundred hours as against two

thousand hours for the drugless practitioner. This of itself, from a professional or business standpoint, would give an advantage in public favor to the licentiates under the chiropractic act over the drugless practitioners. But the more substantial advantage of holding a license under the chiropractic act consists in the preferments and prestige which eligibility to membership in the state board of chiropractic examiners carries with it. This badge of honor and distinction is withheld from the holders of certificates issued to drugless practitioners. Certificate holders under the Medical Practice Act, who are practicing the chiropractic methods, will naturally, for competitive and other reasons, desire to be placed upon an equal plane in public favor with licentiates under the chiropractic act, and will naturally present themselves for examination. The sections above referred to prescribe the terms, recognizing years of practice, by which they as well as others may become licensed under said act. The credits to which applicants are entitled for each year of "actual practice," as provided by the chiropractic act, are based upon lawful or legal practice as prescribed by the Medical Practice Act, which formerly was the only act governing the subject.

The phrase "actual practice" is open to but one construction. It is the opposite of casual or occasional or clandestine practice and carries with it the thought of active, open and notorious engagement in a business, vocation, or profession. It is not to be presumed that a person would boldly engage in active and open violations of the law for a period of three years or that he would be permitted to do so if he so willed. To follow appellants' view it is necessary to presume the continuous existence of unlawful acts which is contrary to every rule of interpretation or construction.

Appellants claim that section 9, subdivision (a), which provides that the board shall, upon receipt of the fee of twenty-five dollars, issue a license to each member of the board, gives support to their interpretation of the act. It is as easily reconcilable to respondents' theory. Drugless practitioners held no license, but certificates, merely, and it was no doubt deemed expedient to raise each member of the board to which he was appointed as an examiner of ap-

plicants, to the standard prescribed for licentiates under the act of which he was an administrative officer.

Laws regulatory of the practice of the law, medicine and the treatment of the sick by various methods, are not new subjects. The meaning of the word "practice" in its relation to the practice of the law, which is analogous to the practice of medicine, was determined in *State* v. *Marks,* 30 La. Ann. 97. Marks, the defendant, had pursued a course in the law department at the University of Louisiana. He had served four years as district attorney of a judicial district and while occupying said office was elected judge of his judicial district. He had never been admitted to practice law by the supreme court of Louisiana. The constitution of that state provided that a district judge "shall have practiced law in this state for two years next preceding his election." The constitution did not require that a person should be a lawyer to be eligible to the office of district attorney. Defendant's right to occupy the judicial office was attacked by a writ of *quo warranto.* In holding the defendant ineligible to the office the supreme court said: "It cannot be presumed that the organic law, in using the words, 'shall have practiced law in this state,' can intend anything but a practice under legal permission. Those who frame a fundamental law, or any law, cannot be supposed to have in contemplation the conferring of a benefit in express terms upon a violator of the law. If, therefore, a person shall practice law, without first obtaining legal permission and in defiance of prerequisites ordained as of essential compliance, he cannot base upon the fact of having thus practiced a legal right to do something else, of which a lawful practice is the condition precedent. The certificates of clerks, and the testimony of litigants, that the defendant had practiced law for two years is of little consequence, unless they are accompanied by a satisfactory exhibition of the authority from which he derives his legal right to practice." (See, also, *Jamieson* v. *Wiggin,* 12 S. D. 16 [76 Am. St. Rep. 585, 46 L. R. A. 317, 80 N. W. 137]; *Howard* v. *Burns,* 14 S. D. 383 [85 N. W. 920]; *State* v. *Schmahl,* 125 Minn. 533 [147 N. W. 425]; *Freiler* v. *Schuylkill Co.,* 46 Pa. Sup. Ct. 58.)

For a list of authorities which construe the meaning of the word "practice" in its relation to the practice of den-

tistry, medicine, and chiropractic methods in harmony with the general view we have taken of the subject, see *State* v. *Board of Dental Examiners,* 31 Wash. 492 [72 Pac. 110] ; *State* v. *Wilson,* 61 Kan. 791 [60 Pac. 1054] ; *Green* v. *Hodges,* 91 Kan. 658 [138 Pac. 605] ; *State* v. *Board of Dental Examiners,* 96 Or. 529 [188 Pac. 960] ; *Driscoll* v. *Commonwealth,* 93 Ky. 393 [20 S. W. 431].

Appellants very greatly rely upon *Bohannon* v. *Board of Medical Examiners,* 24 Cal. App. 215 [140 Pac. 1089], as "determinative of the interpretation of the words 'practiced' and 'actual practice' as found in the chiropractic act," and as meaning unlawful practice. That case, like a few others that might be referred to, deals with expedient or emergency acts. The force of the Bohannon case as authority here is broken by the weight of its own language. It was clearly the intent of the *act there discussed* to admit to practice persons who had practiced without a license a special branch of medicine and surgery for a period of not less than thirty-five years. It is there said: "It is not seriously contended, nor can it be, that such is not the *express intent* of the legislature." (Italics ours.) These appellants, however, were required to submit to an *examination,* receiving a credit of five per cent for each ten years of practice. The fact that no examination is required as a prerequisite for membership in the board of examiners by the initiative act would indicate as a matter of course that the certificate of qualification issued by the state after examination conducted by its agents was a sufficient test of competency.

No impartial person, we think, who thoughtfully peruses the act before us, in the light of the well-recognized rules of statutory construction and the evident policy of the law itself, can be of the mind that it was *clearly intended* by said act, as said in the Bohannon case, to make eligible for office those who had not qualified themselves to practice in accordance with the rules governing the subject. No overdrawn intendments of law or presumptions of fact can be indulged to bring about the results sought to be accomplished.

Nothing appears in the title or upon the face of the act to indicate that the electors who made it the law understood that the commission of a series of acts forbidden by law was to be made the legal basis for promotion to high adminis-

trative places. Surely, the act does not disclose any such intent. If this had been the intention, it would have been a simple matter to have stated it.

We are of the opinion that the appellants' interpretation of the act cannot be sustained.

Judgment affirmed.

Lawlor, J., Lennon, J., Waste, J., Richards, J., Myers, J., and Wilbur, C. J., concurred.