THE STATE OF KANSAS, *Appellee*, v. J. N. PETERS, *Appellant.*

No. 18,016.

SYLLABUS BY THE COURT.

1. MEDICAL REGISTRATION — *Practice of Medicine* — *"Suggestive Therapeutics."* The appellant professed to treat sick and diseased people, maintained an office for that purpose, and treated patients for the cure and relief of bodily infirmities or diseases, by examination of the person and by rubbing the parts of the body supposed to be affected, doing this as a business for fees charged therefor. It is held that he is subject to the provisions of the statute creating a board of medical registration and examination and regulating the practice of medicine, surgery and osteopathy. (Gen. Stat. 1909, §§ 8085-8093.)

2. ———— *Same.* The provision that nothing in the act referred to shall be construed as interfering with religious beliefs in the treatment of diseases does not exempt from its operation one who practices in the manner and by the means stated in the preceding paragraph, although he believes that the words of Jesus in regard to healing can be carried out; that from Bible study and supplemental study of psychology and suggestive therapeutics he can to some extent carry out such healing practices, and that it is his duty to do so.

Appeal from Smith district court. Opinion filed May 11, 1912. Affirmed.

*Sol L. Long, R. W. Turner, I. M. Mahin, F. W. Mahin,* and *W. E. Mahin,* for the appellant.

*John S. Dawson,* attorney-general, and *L. C. Uhl, jr.,* county attorney, for the appellee.

The opinion of the court was delivered by

BENSON, J.: The information contained six counts. The first count charged that the appellant without having received a certificate from the state board of medical registration and examination authorizing him to practice medicine, surgery or osteopathy in this state, as required by law, had practiced medicine and surgery by treating the sick for a fee, and that he had represented and advertised that he was authorized to and did treat the sick and those afflicted with bodily infirmities. He was convicted on this count only.

The first assignment of error is based upon the contention that the offense is a continuing one for which but one penalty can be imposed and therefore only one charge should have been submitted to the jury. As the conviction was upon one count only the objection urged is immaterial and need not be considered.

The principal contention of the appellant is that the evidence shows that he was not practicing medicine, surgery or osteopathy, but was only practicing a religious belief, and in view of the recent consideration given to the general subject in *The State v. Johnson,* 84 Kan. 411, 114 Pac. 390, this is the only matter requiring comment.

The statute provides:

"Any person shall be regarded as practicing medicine and surgery within the meaning of this act who shall prescribe, or who shall recommend for a fee, for like use, any drug or medicine, or perform any surgical operation of whatsoever nature for the cure or relief of any wounds, fracture or bodily injury, infirmity or disease of another person, . . . or any person representing or advertising himself by any means or through any medium whatsoever, or in any manner

The State v. Peters.

whatsoever, so as to indicate he is authorized to or does practice medicine or surgery in this state, or that he is authorized to or does treat the sick or others afflicted with bodily infirmities, but nothing in this act shall be construed as interfering with any religious beliefs in the treatment of diseases; *provided,* that quarantine regulations relating to contagious diseases are not infringed upon.     All persons who practice osteopathy shall be registered and licensed as doctors of osteopathy, as hereinbefore provided, but they shall not administer drugs or medicine of any kind nor perform operations in surgery."     (Laws 1908, ch. 63, § 1, Gen. Stat. 1909, § 8090.)

A witness upon whose testimony the state relied in sustaining the count under which the verdict was returned testified:

"I went to him and I says to him, 'I am pretty bad; I am feeling awful bad,' and I says to him, 'Do you think you can do me any good,' and he looked at me, felt of my head, my forehead and temples and the back of my neck and said he could.   .   .   .   I says, if you can help me, that is what I came for.   Get right at it; and so we went in the other room where he treats his patients, and he gave me the treatment.   .   .   .   He first commenced to rub my forehead around this way (indicating) ; rubbed my temples and the back of my neck, and then way down the body over my kidneys and hips, and he says: 'You are threatened with typhoid fever,' and he says, 'I think I can break that up in about three days; and before the end of three days I did n't feel any symptoms of the fever.   .   .   .   I told him I felt pretty sick for a week or ten days and had no appetite.     That was just the way of it.

"Q.  Did you pay him for this treatment?  A.  Yes, sir.

"Q.  Did you ask him anything about what he was doing there?  How his business was?  A.  Asked him what he was doing?

"Q.  What did he say?  A.  He did n't say anything, only give me the treatment.

"Q.  Did you see any circulars in there at that time?  A.  Not at that time.

"Q.  Before that?  A.  No, sir.

"Q.  Did you get any circulars at that time?  A.  I

did after this. I was in there one day and he handed me one of those little circulars.

"Q. What time was that? A. Well, I couldn't state just exactly what date that was. It was a few days after I took the first treatment, probably a week or such a matter.

"Q. Do you belong to any church? A. No, sir.

"Q. Was this treatment you took a matter of religious belief? A. Kinda borders on the religion.

"Q. What religion is it? A. Well, it is a good kind if there is any. . . . I don't remember whether that was all that was said or not. Before I commenced taking treatments he said I had a complication of diseases; that I had stomach trouble, but I knew that before he told me; also, that I had kidney trouble; and also rheumatism. Had rheumatism for several years off and on. . . .

"Q. What else did he say? A. He said he could help me.

"Q. When he passed his hands over you? A. He rubbed all the time.

"Q. Wasn't just passing his hands over you as a minister of the gospel, was he? A. Rubbed my hands and back and shoulders.

"Q. Did you go to him as a minister of the gospel? A. No, sir."

Another witness testified:

"I had a cough and have had it for years. He [appellant] says, 'I can cure that.' 'No,' I says, 'you can't.' He says, 'Yes, I can; I am prepared; I am qualified; I have got a license to cure it,' and that was about all the conversation we had. About all him and me had about it. We had several conversations about his patients. . . . And he said he was getting along splendidly, and told me of the twelve or sixteen patients he had. But this was prior to the time he offered to cure me for my cough.

"Q. In this conversation in November, 1910, when he talked about having a license, did he talk to you about the gospel of Jesus Christ? A. No, sir; nothing said to me about that."

Another witness testified that he had been in the appellant's office in Lebanon when he was treating a patient, that he seemed to be elated, spoke of having

The State v. Peters.

a good practice, and said that he had some sixty-odd patients in Osborne county where he had another office, and spoke of the great success he was having, and that he had more than he could do.

The appellant testified that he kept accounts with people who came to be treated, and admitted that the witness first referred to gave him "something for his services." It also appeared in evidence that the appellant caused the following circular or handbill to be printed:

"RESULTS OF SUGGESTIVE THERAPEUTIC
METHODS.

"I treat all diseases, acute and chronic, without the use of drugs. Though your case may have been declared hopeless, you may still be able to obtain good results, or a permanent cure, from our treatment. Yours very respectfully."

With this were printed letters or testimonials from several persons. These circulars were seen in his office, and he presented one to a witness who had been treated by him.

The appellant explained his practice thus:

"First had my attention called to healing people about twenty-five years ago from the study of the Bible. I supplemented that study by different branches. I have religious beliefs as to healing. I believe that the words of Jesus Christ in regard to healing can be carried out now just the same as they ever could. I believe from my study of the Bible and my supplemental study that I can carry out to some extent the healing as by Him practiced. My conviction is that I can do the work and ought to do it and this has been my belief during the past three years and it is my conviction that it is a duty I owe and must perform it. My supplemental studies have been psychology and suggestive therapeutics. I have studied the Weltmer system of suggestive therapeutics."

The president of the Weltmer institute testified:

"The fundamental principle in Suggestive Therapeutics is that the movement of the mind is the remedy in healing. Mind is both finite and infinite intelligence,

which governs all physical and mental actions, conscious and unconscious. Thinking is the mind's mode of acting. Then thought is a movement of the mind. Whatever other method is used is for the purpose of starting the mind of the patient into a state of activity in which the vibrations of his own mind will change the cell vibrations of his body. A movement of the mind that would have in it the constructive idea of replacing diseased tissue with healthy tissue, would be a therapeutic thought. Anything that will induce this subjective intelligence to begin the process of healing is a therapeutic suggestion. Anything from the outside world that would secure a response from the suggestive mind would be a suggestion."

This witness and another who is a graduate of several regular medical schools testified that the system of suggestive therapeutics does not involve the practice of medicine or surgery.

It was held in the Johnson case (*The State v. Johnson,* 84 Kan. 411, 114 Pac. 390) that a system of healing by which diseases are treated by manipulations of the spinal column was within the purview of the statute. As the treatment given by the appellant consisted of manipulations and rubbing over parts of the body supposed to be affected, the principles of that decision and the authorities there cited are applicable. The appellant was regularly engaged in soliciting, receiving and treating patients for bodily infirmities, for fees charged and collected. This is within the statute. The opinions of witnesses, however learned in their profession, can not prevail against the legislative enactment.

The claim of the appellant that he only practiced a religious belief, within the exception which declares that nothing in the act shall be construed to interfere with any religious beliefs in the treatment of diseases, can not be sustained. The only basis for this claim is the appellant's testimony that he believed the words of Jesus in regard to healing; that from Bible study and supplemental study of psychology and suggestive therapeutics he believes that he can carry out this healing

practice to some extent, and that it is his duty to do so. Still the fact remains uncontradicted that he diagnosed diseases and treated patients in a matter-of-fact way by manipulations and rubbing. He was thus treating people as a business for compensation, by outward physical means, and was not engaged merely in a religious observance, or, as counsel say, "practicing a religious belief." The place and value of suggestion in the treatment of diseases need not be discussed, for apart from this, the appellant engaged in the practice requiring an examination and certificate under the statute.

What particular services or practices are within the exception need not be discussed. It is sufficient to say that in this case the evidence fails to show that the appellant is exempt from the operation of the statute.

Upon an examination of the instructions, so far as criticized by the appellant, they are found to be in harmony with these views. The insistence that they interfere with the freedom of religious belief is unfounded. The medical practitioner may entertain any belief his conscience approves, but this will not excuse him from a failure to observe the laws of the state regulating the calling in which he is engaged. In view of the consideration given to the scope and effect of this statute in *The State v. Johnson,* 84 Kan. 411, 114 Pac. 390, and the authorities there cited, which are applicable to the facts of this case, it is unnecessary to prolong this opinion.

The judgment is affirmed.